IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Wiley Y. Daniel**

Civil Action No. 07-cv-01192-WYD-BNB

ROBERT BURNS, and
BETTY KLINE

    Plaintiffs,

v.

ANDERSON, CRENSHAW & ASSOCIATES, L.L.C.,
A Texas Limited Liability Company,

    Defendant.

---

**ORDER GRANTING SUMMARY JUDGMENT**

---

THIS MATTER comes before the Court on Defendant's Motion for Summary Judgment filed January 30, 2008 (Docket # 36). Defendant claims that the Plaintiffs have not established that they were injured by Defendant's conduct and therefore cannot recover under the Fair Debt Collection Practices Act ("FDCPA"). 15 U.S.C. § 16952, *et seq*. For the reasons stated below I grant Defendant's Motion for Summary Judgment.

I.    <u>FACTUAL BACKGROUND</u>

Construing the evidence in the light most favorable to Plaintiffs as I must for purposes of this summary judgment, I find the following facts are relevant to my analysis. Plaintiffs Betty Kline ("Kline") and Robert Burns ("Burns") (collectively "Plaintiffs") have been "mates" for over ten years. *See* Def.'s Mot. for Summ. J. ¶ F. Both Plaintiffs are on fixed incomes and have no other source of income. *Id.*, ¶¶ T, Y.

On June 20, 2006, Plaintiffs, through Kline, entered into a contract for alarm monitoring services with Apex Alarms ("Apex"). Def.s' Mot. for Summ. J., ¶ A.[1] Plaintiffs subsequently defaulted in their payment obligations to Apex. *Id.*, ¶ B.[2] The debt was then assigned to Defendant. *Id.*, ¶ C.[3] During the course and scope of its business, Defendant contacted Plaintiffs attempting to collect the lawful debt. *Id.*, ¶ D. Specifically, the Complaint alleges that Defendant called Plaintiffs' home from March 2007 through June 2007 and that Plaintiffs called Defendant back in response to these calls. Compl., ¶ 15.

On June 6, 2007, Plaintiffs filed the instant action alleging that Defendant engaged in communications with Plaintiffs the natural intent of which was to abuse and harass them. Def.s' Mot. for Summ. J., ¶ E. The Complaint alleges that Defendant's representatives falsely threatened to sue Plaintiffs and take them to Court if they did not pay the debt and falsely threatened (1) to take a judgment against Plaintiffs, (2) to put a lien on Plaintiffs' house, (3) to report the account to the credit bureaus, and (4) to add attorney's fees and costs onto the balance if Plaintiffs did not pay the account. Compl.,

---

[1] Defendant asserts that the debt was incurred on June 23, 2006. Plaintiffs assert the contract was signed on June 20, 2006. Plaintiffs do not, however, dispute that the contract for alarm services constituted a debt.

[2] While Plaintiffs alleged in the Complaint that there were insufficient funds in their bank account at the time Apex cashed the check due to circumstances beyond their control, this has not been raised as a disputed material fact in connection with the summary judgment motion, and I find this is not pertinent to resolution of the motion.

[3] While Plaintiffs asserted in their response that they were not provided written proof of the assignment, Defendant has provided evidence that it provided such proof to Plaintiffs' counsel. Thus, I find that Plaintiffs have not shown that there is a genuine issue of material fact as to this issue.

¶¶ 16-19.[4] Plaintiffs allege that this behavior was "part of a campaign of abusive and unlawful collection tactics directed at the Plaintiffs" and thus constitutes a violation of the FDCPA. *Id.*, ¶ 24.

Plaintiffs claim that as a result of Defendant's collection actions and communications they have "suffered economic loss, loss of self-esteem and peace of mind, and have suffered emotional distress, humiliation and embarrassment." Compl., ¶ 30. Plaintiff Burns claims that he suffered from headaches, trouble sleeping, anger, frustration, humiliation and emotional distress, withdrawal from social situations and damage to self-esteem as a result of his actions. Def.'s Mot. for Summ. J., ¶ G. Plaintiff Kline testified in her deposition that as a result of the Defendant's calls she was angry, embarrassed, had headaches and had trouble sleeping. Pl. Kline's Dep., pg. 10, ll. 6-8, pg. 25, ll. 1, 20-25, attached to Def.'s Mot. for Summ. J.

Plaintiff Burns filed a lawsuit entitled Robert Burns v. TRS Recovery Systems, Inc. ("TRS"), Civil Action NO. 1:06-cv-02563-PSF-CBS in this Court on or about December 22, 2006. Def.'s Mot. for Summ. J., ¶ J. Burns asserts that he suffered from headaches, trouble sleeping, anger and humiliation and frustration as a result of conduct of TRS Recovery Systems, and admits that he did not get past the headaches and emotional distress from TRS until July or August of 2007, after Defendant began to communicate with Plaintiffs. *Id.*, ¶¶ L-P. Burns is dying from severe emphysema and has an oxygen problem. *Id.*, ¶ R. Defendant alleges that Burns' alleged emotional distress and humiliation were caused by a third party, TRS, and/or by his pervasive

---

[4] These facts were not set forth by either party in connection with the facts in the summary judgment briefing, but I find the facts to be pertinent to Defendant's motion.

failing health issues, which Burns denies. *Id.*, ¶¶ Q, S. As to Kline, Defendant alleges that her alleged emotional distress and humiliation was caused by her deteriorating financial situation. Kline denies this, although she admits that at the time Defendant was attempting to collect the debt she was trying to obtain a loan from a friend to help her pay her bills. *Id.*, ¶¶ Y, BB.

Defendant moves this Court for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. Defendant claims that as a matter of law Plaintiffs have not established that there is a genuine issue of material fact. For the following reasons, I agree.

## II. <u>STANDARD OF REVIEW</u>

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the...moving party is entitled to judgement as a matter of law. FED. R. CIV. P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "When applying this standard, [the court must] 'view the evidence and draw all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment.'" *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000) (quotation omitted).

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*,

477 U.S. 317, 322 (1986). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322-23. The moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id.* at 323.

III. ANALYSIS

Defendant asserts that it is entitled to summary judgment because Plaintiffs have produced no evidence that they sustained actual damages in the form of economic loss or mental anguish/emotional distress. Defendant further argues that even if Plaintiffs sustained mental anguish, their claims fail because they cannot show that Defendant proximately caused Plaintiffs' alleged damages. Instead, it is argued that Plaintiffs' alleged emotional distress was caused by third parties, Plaintiffs' dire financial situation and/or severe health issues. Finally, Defendant argues that the maximum amount of statutory damages Plaintiffs can receive under the FDCPA is completely offset by Plaintiffs' lawful debt. Accordingly, Defendant asserts in its motion that Plaintiffs cannot establish they are prevailing parties under the FDCPA and are not entitled to any damages, costs or attorney's fees under the FDCPA.

A. Actual Damages

I first address the issue of whether Plaintiffs have shown that they suffered actual damages. Under the FDCPA, actual damages may be awarded as a result of the failure of a defendant to comply with the Act. 15 U.S.C. 1692k(a)(1). It is the

Plaintiffs' burden to prove they are entitled to such damages. *Wantz v. Experian Information Solutions*, 386 F.3d 829, 833 (7th Cir. 2004).

As to economic loss, while Plaintiffs deny Defendant's assertion that Plaintiffs did not sustain any economic loss (Def.'s Mot. Summ. J. ¶¶ H, CC), I find that they did not present evidence of any actual economic loss. Further, Plaintiffs did not testify to any actual economic loss in their deposition testimony, the only evidence presented in the case. *See* Burns' Dep. pg. 29, ll. 13-18, Kline Dep. pgs. 33 l. 24 - 34 ll. 1-2. Further, I note that Plaintiffs are on a fixed income, and did not show that their financial situation changed due to Defendant's phone calls. Plaintiffs did, however, allege damages for emotional distress, which is supported by their deposition testimony. I thus must address whether the evidence is sufficient to constitute a claim for actual damages.

"Actual damages not only include any out of pocket expenses, but also damages for personal humiliation, embarrassment, mental anguish or emotional distress." *See Panahiasl v. Gurney*, No. 04-04479 JF, 2007 WL 738642 at *1 (N.D. Cal. 2007); *see also McGrady v. Nissan Motor Acceptance Corp.*, 40 F. Supp. 2d 1323, 1338 (M.D. Ala. 1998). There is, however, a split in the courts as to whether a plaintiff's claim for damages for emotional distress under the FDCPA are evaluated under the state law standard governing the tort of intentional infliction of emotional distress ("IIED") or some lower standard. *See Costa v. National Action Financial Servs.*, No. S-05-2084 FCD/KJM, 2007 WL 4526510, at *7 (E.D. Cal. 2007).

As noted by *Costa*, some courts require the plaintiff to prove the elements of a state tort claim for IIED. *Id.* at *8 (citing *Pflueger v. Auto Finance Group, Inc.*, 1999 WL 33738434 at *4 (C. D. Cal.1999); *Carrigan v. Central Adjustment Bureau, Inc.*, 502

-6-

F. Supp. 468, 470-71 (N. D. Ga.1980); *Venes v. Professional Service Bureau, Inc.,* 353 N.W.2d 671, 674-75 (Minn.Ct.App.1984)). Other courts have concluded that a plaintiff does not need to meet the state law standards for IIED in order to recover emotional distress and have adopted a lower standard of proof. *Id.* at *7 (citing *Panahiasl*, 2007 WL 738642 at *1; *Foster v. D.B.S. Collection Agency,* 2006 WL 3491867 (S. D. Ohio 2006); *McGrady,* 40 F. Supp. 2d at 1338-39). Under the latter approach, courts have analogized the FDCPA to the Fair Credit Reporting Act ("FCRA"). *Id.* Under the FCRA, if a plaintiff proves a violation of the act he is entitled to actual damages for emotional distress without proving the elements of the state tort claim. *Id.*; *see also Panahiasl*, 2007 WL 738642, at *1-2.

In *Costa*, after evaluating both approaches to proving emotional distress damages under the FDCPA, the court found "persuasive those cases requiring a plaintiff to establish the elements of a claim for IIED under state law in order to sustain a claim for emotional distress damages under the FDCPA." *Id.* at *8. As support for this finding, the court stated:

> First, Section 1692 *et seq.* [of the FDCPA] contains no indication Congress intended to create a more lenient IIED standard in enacting the FDCPA. Moreover, the FDCPA expressly requires to recover above and beyond statutory damages, *definable actual* damages. 15 U.S.C. § 1692k(a)(1). There must be some standards to adjudge those damages, and the court finds that the standards for a state IIED claim serve that purpose well as they ensure that the alleged damages are real and quantifiable.

*Id.* I find the reasoning of *Costa* to be persuasive and believe that the better reasoned approach is to require a plaintiff asserting emotional distress damages under the

section of the FDCPA at issue, 15 U.S.C. § 1692d, to prove the elements of a state law tort claim for IIED.

In so finding, I note that this approach seems best suited to the section of the FDCPA which Plaintiffs claims has been violated, which I find differs significantly from the FCRA. The FCRA was enacted "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy.'" *Safeco Ins. Co. of Am. v. Burr*, ___ U.S. ___, 127 S. Ct. 2201, 2205 (2007). "The FCRA is intended to protect consumers against the compilation and dissemination of *inaccurate* credit information." *Deandrade v. Trans Union LLC*, 523 F.3d 61, 67 (1st Cir. 2008) (emphasis in original). Violations of the FCRA, such as inaccuracies in credit reporting and/or failing to comply with notice requirements regarding consumer reports, are all fairly concrete and determinable events. The FCRA does not contain a section related to violations for harassing or abusive conduct, and it seems that most violations of the FCRA would not involve such conduct. As such, it would be difficult if not often impossible for a plaintiff seeking relief under the FCRA to prove outrageous conduct under the state tort standard.

Unlike the FCRA, however, the FDCPA contains a section that specifically relates to violations for harassing and abusive actions of a debt collector. 15 U.S.C. § 1692d states that "[a] debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." *Id*. This type of conduct is not a concrete violation that is easily assessed or identified. Further, the FDCPA does not define what type of behavior is sufficient to constitute a violation of that section and how damages are to be determined as to

emotional distress that arises from same.  The state tort law of IIEC seems to be the most appropriate mechanism for such proof, as it covers emotional distress damages that occur from harassing and other outrageous behavior.  *See, e.g., McCarty v. Kasier-Hill Co., L.L.C.*, 17 P.3d 1122, 1126 (Colo Ct.. App. 2000).

Thus, I evaluate whether Plaintiffs proved IIED under state tort law.  In Colorado the elements of outrageous conduct are: "(1) the defendant engaged in extreme and outrageous conduct; (2) the defendant engaged in such conduct recklessly or with the intent of causing the plaintiff severe emotional distress; and (3) the defendant's conduct caused plaintiff to suffer severe emotional distress."  *Id*.  The level of outrageousness required for conduct to create liability for intentional infliction of emotional distress is extremely high."  *Id.*  "Liability has been found only where the conduct has been so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Id.*  In general the question whether conduct is outrageous is a question of fact.  *Id*.  However, the court is responsible for first determining whether reasonable persons could differ on the question.  *Id.*

I find that the evidence of Defendant's conduct does not rise to the level of outrageous conduct under that standard.  I first note that Plaintiffs did not identify any facts in response to the summary judgment motion that support a claim that Defendant's conduct was outrageous.  Pursuant to Section III.B.5 of my Practice Standards, Plaintiffs had not only the opportunity to respond to Defendant's Statement of Undisputed Facts but to set forth any additional facts which they believed undercut Defendant's claim that it is entitled to judgment as a matter of law.  Plaintiffs did not

submit any such facts in its response nor did they present any evidence on the issue, as was their duty. *Celotex*, 477 U.S. at 324 (the non-movant must establish that there are issues of material fact to be determined; in doing so, the non-movant "may not rest solely on the allegations in the pleadings, but must instead designate 'specific facts showing that there is a genuine issue for trial'") (citing FED. R. CIV. P. 56(e)). I have, however, reviewed the evidence submitted in this case (the only evidence was submitted by Defendant) and find that the evidence does not support a claim of IIED under Colorado law.

Plaintiffs testified that Defendant's representative called them frequently during the relevant time frame. While Kline testified that there were multiple calls every day (Kline. Dep. pg. 8 ll. 9-12), Burns testified that the calls were not made every day (Burns Dep. pg. 9 ll. 1-6.) There was no testimony that the actual content of Defendant's phone calls was harassing; instead, Plaintiffs appear to be objecting to the fact that a collection agency was repeatedly calling trying to collect a debt. *See* Kline Dep. pg. 15, ll. 2-3; Burn Dep. pg. 10 ll. 10-16, pg. 15, l. 16. Kline further testified that she was frustrated at the calls because Apex's employee had not taken care of the situation properly. Kline Dep. pg. 27:3-16. Plaintiffs admit that Defendant's employee did not use profanities or obscenities or yell at Plaintiffs when calling them. Kline Dep. pg. 16, l. 14; Burns Dep. pg. 9, ll. 9-10, pg. 9 ll. 19-20. Kline admits that the employee's behavior was professional during the phone calls. Kline Dep. pg. 16, ll. 16-17.

Plaintiffs also testified that the only threats made to them by Defendant were the threats to put a lien on their home and to report the defaulted payments to the three major credit bureaus. Burns Dep. pg. 9, ll. 13-15; Kline Dep. pg. 8, ll. 15-17. Plaintiffs

have presented no evidence that these threats were improper or illegal.   While Defendant may not have followed through on the threat to put a lien on Plaintiffs' home, Plaintiffs fail to establish that it would have been unlawful for Defendant to do so.

From the foregoing, I find no evidence to suggest that Defendant's conduct was outrageous.  Courts have long recognized that the very nature of collection efforts often cause a debtor to suffer emotional distress.  *See Costa*, 2007 WL 4526510, at *8-9.  Indeed, *Id*.  To be actionable as an IIED claim, however, the conduct must go beyond all reasonable bounds of decency.  *Id.*  At most, Plaintiffs allege conduct that was rude, impolite and annoying as to its frequency.  I find that Plaintiffs have not presented sufficient evidence that Defendant's conduct rose to the level of outrageous conduct.  *Id*.; *see also McCarty*, 15 P.3d at 1126-27  (claim that supervisors sought to drive plaintiff out of his employment through a pattern of intimidation and harassment that included threatening phone calls and physical intimidation in the form of vehicular assaults was not outrageous as a matter of law); *Coors Brewing Co. v. Floyd*, 978 P.2d 663, 666 (Colo. 1999) (en banc) (allegations "that Coors engaged in an extensive criminal conspiracy involving illegal drugs and money laundering and that Coors fired Floyd to scapegoat him for these crimes" was not outrageous as a matter of law).

While I believe that the state tort standard is appropriate for determining whether damages for emotional distress are appropriate under the FDCPA, I find that Plaintiffs have not presented evidence to support their emotional distress damages even under the more lenient standard which allows a plaintiff to prove damages for emotional distress without having to prove a right of action under state law.  This is because even

under the more lenient standard the plaintiff must demonstrate more than conclusory and transitory symptoms of emotional distress.

Where the plaintiff's own testimony is his only evidence of emotional damages, 'he must explain the circumstances of his injury in reasonable detail" and not rely on conclusory statements, unless the "facts underlying the case are so inherently degrading that it would be reasonable to infer that a person would suffer emotional distress from the defendant's action.'" *Wantz v. Experian Information Solutions*, 386 F.3d 829, 834 (7th Cir. 2004); *see also Cousin v. Trans Union Corp.*, 246 F.3d 359, 371 (5th Cir. 2001); *Costa*, 2007 WL 4526510, at *9-10; *Breed v. Nationwide Ins. Co.*, No. 3:05CV-547-H, 2007 WL 1231558, at *3 (W.D. Ky. 2007). In this case, like in *Wantz*, I find the facts are not so inherently degrading that it would be reasonable to infer that Plaintiffs suffered emotional distress from Defendant's actions. Further, Plaintiffs did not adequately prove their emotional distress damages as they relied only on their own conclusory statements which are unsupported by any other evidence. They also did not explain their injury with enough detail to meet their burden to avoid summary judgment. Accordingly, I find that summary judgment is appropriate as to the actual damages claimed by Plaintiffs even under the lesser standard.

I also note that Plaintiffs had a remedy available to them which they chose not to take advantage of. Plaintiffs could have notified Defendant in writing that they no longer wished to be contacted or that they were disputing the debt. 15 U.S.C. § 805(c). Kline cancelled the contract with Apex but that did not discharge the debt. Plaintiffs did not notify the Defendant, in writing, that they no longer wished to be contacted.

Any emotional distress that Plaintiffs suffered as a result of Defendant's calls could have been reduced had Plaintiffs taken these steps.[5]

Since I find that Plaintiffs have not proven actual damages under § 1692k(a)(1) of the FDCPA, I find that Defendant's Motion for Summary Judgment must be granted on this issue.  Further, since I find that actual damages were not proven, I need not address the alternative argument that Plaintiffs' damages were not caused by Defendant but by third parties or other factors.  However, I still must address Defendant's argument as to statutory damages under the FDCPA.

      B.      <u>Statutory Damages</u>

The maximum amount of statutory damages Plaintiffs can receive under the FDCPA is $1,000.00 per 15 U.S.C. § 1692k(a)(2).  Defendant argues that the undisputed amount of the debt is $1,370.74, and that the amount of the debt may be used to offset any statutory damages recoverable under the FDCPA.  Since the amount of the debt exceeds any statutory damages that are recoverable, Defendant argues that it is entitled to summary judgment on statutory damages.  Plaintiffs did not address this argument in their response, nor did they dispute the facts relied on by Defendant in support of its argument.  Accordingly, I find that summary judgment is appropriate on this issue as well.  *See Luginbyhl v. Corrections Corp. of America,* 216 Fed. Appx. 721,

---

[5] Finally on the issue of the claimed damages for emotional distress, I note that Defendant showed that Plaintiffs' counsel filed 382 other cases under the FDCPA in this Court.  In each case, as here, counsel alleged that the plaintiff(s) suffered from "economic loss, loss of self-esteem and peace of mind, and has suffered emotional distress, humiliation, and embarrassment."  *See* Def.'s Mot. for Summ. J. ¶ 23.  While Plaintiffs' counsel takes issue with Defendant's reference to this fact and even seeks sanctions as a result, I do find it troubling that counsel used the same language in every case to describe an injury that is very individualized and will differ from plaintiff to plaintiff.  This is not, however, a basis for my ruling.

723 (10th Cir. 2007) (where a plaintiff fails to respond, a court may grant summary judgment if the uncontroverted facts in the motion meet the requirements of Rule 56(c)).

Based upon the foregoing, Plaintiffs have not shown that they are entitled to damages in this case based on the alleged harassment by Defendant. Accordingly, I find that Plaintiffs cannot establish they are prevailing parties under the FDCPA. Defendant's Motion for Summary Judgment is thus granted, and the trial set to commence in this matter on February 9, 2008, is vacated.

    C.    Sanctions

Finally, I address Plaintiffs' request in their response brief for sanctions against defense counsel based on the fact that counsel has filed a frivolous motion for summary judgment. I find Plaintiff's motion for sanctions to be entirely without merit. Defendant's summary judgment motion is certainly not frivolous, as I granted the motion. Further, the request for sanctions was not properly presented to the Court. D.C.COLO.LCivR 7.1(c) requires that any motion for sanctions be made in a separate paper and not included in a response to an original motion, as here. Accordingly, Plaintiffs' request for sanctions is denied.

IV.    CONCLUSION

Based on the foregoing it is

ORDERED that Defendant's Motion for Summary Judgment filed January 30, 2008 is **GRANTED**. It is

FURTHER ORDERED that the four-day jury trial set to commence Monday, February 9, 2009, and the final trial preparation conference set for Thursday, January 29, 2009, at 4:00 p.m. are **VACATED**.

Dated: August 15, 2008

         BY THE COURT:


         s/ Wiley Y. Daniel
         Wiley Y. Daniel
         U. S. District Judge